112 So.2d 487

Knox McRAE

v.

STATE of Alabama ex rel. Richard
J. HYCHE.

8 Div. 976.

Supreme Court of Alabama.

May 28, 1959.

Vincent F. Kilborn, Mobile, and Norman
W. Harris, Decatur, for appellant.

242

S. A. Lynne, Noble J. Russell and Joe H. Calvin, Decatur, for appellee.

LIVINGSTON, Chief Justice.

This is a quo warranto action brought under the provisions of Section 1136 of Title 7, Code of Alabama 1940. It is instituted on the information and relation of Richard J. Hyche, and has for its purpose the ousting of the defendant, Knox McRae from the office of Sheriff of Morgan County, Alabama, and to install the relator, Hyche, in that office. The demurrer of Knox McRae, to the information, was overruled, whereupon, McRae filed three pleas, the first two of which were the general issue. Plea 3 set up in detail the facts pertaining to defendant's appointment to the office, and in that respect ·contained substantially the same allegations of the information, but in addition, Plea 3 averred facts showing that McRae was eligible to the office and that he had duly qualified by making and filing his oath of office. Relator's demurrer to Plea 3 was sustained.

Issue was joined on the information and the two pleas of the general issue, and, after hearing the evidence, the Circuit Court of Morgan County rendered a judgment in favor of the relator, Hyche, adjudging that defendant, McRae, was illegally holding the office of sheriff, and that the relator was legally entitled to the office. The judgment excluded McRae from the office and ordered that the relator, Hyche, immediately assume the duties of the office.

The controversy between Hyche and McRae is as to which of them is entitled to hold the office of sheriff for the four-year term which commenced on January 20, 1959. The solution of that controversy depends on whether the power to fill the vacancy in that office for that term was vested in Governor Folsom on December 29, 1958, when he appointed McRae, or in Governor Patterson on January 22, 1959, when he appointed Hyche.

There seems to be no factual dispute between the parties, and since all the pertinent facts are alleged in the information and in the special plea, the appeal is on the record proper.

The undisputed facts are substantially as follows:

James H. Collier was elected Sheriff of Morgan County at the general election in

November 1954 for a term of four years, commencing in January 1955. He duly qualified and served continuously until his death. At the general election in November 1958, shortly before his death, Collier was re-elected for another four-year term to commence on January 20, 1959. This is the term here involved. Collier duly qualified on November 24, 1958, for the term commencing on January 20, 1959, by making his bond and securing its approval and filing it and his oath of office. On December 1, 1958, his commission was duly issued.

On December 24, 1958, Collier died, and on December 26, 1958, the probate judge notified the Governor of his death.

On December 29, 1958, upon receipt of notice of the death of Collier, Governor Folsom appointed McRae to the vacancy in the unexpired term ending on January 19, 1959, and also to the vacancy in the four-year term commencing on January 20, 1959.

It appears in Plea 3, though not in the information, that McRae was eligible for the office and duly qualified for both terms by making bonds and filing oaths of office. On January 12, 1959, two commissions were issued to McRae and he assumed the duties of the office and was holding it when this proceeding was instituted.

Governor Patterson was inaugurated January 19, 1959.

On January 22, 1959, Governor Patterson without having received an official notice of the certificate of the death of Collier, other than the one transmitted to Governor Folsom, appointed Hyche, who was also eligible for the office, and he duly qualified by making bond and filing his oath of office. On January 26, 1959, Hyche received his commission and demanded the office of McRae, who refused to surrender it.

It is admitted by both Hyche and McRae that the Governor is the proper appointing authority under Sections 176 and 177 of Title 41, Code of 1940, and further that the term of office of the governor and sheriff are concurrent and begin and end contemporaneously with each other, Sec. 116 of the Constitution of 1901; Sec. 18, Title 41, Code of 1940, and that the death of an officer-elect after he has duly qualified but before the new term has commenced, creates a vacancy in the new term to which he was elected.

It seems the question in this case, therefore, resolves itself into a determination of whether the vacancy in the new term created by the death of Sheriff Collier on December 24, 1958, could be filled by Governor Folsom, as appellant contends, or was the appointment to fill such vacancy to be made by Governor Patterson, whose term of office began on January 20, 1959, as appellee contends?

Appellant insists that the present controversy is controlled by the case of State ex rel. Foster v. Rice, 230 Ala. 608, 162 So. 292, 297. Appellee submits that this case is not controlled by the Rice case, supra, but if it is, the Rice case should be overruled, because it is unsound.

There is one difference between the Rice case, supra, and the present record before us. The record in the Rice case discloses that Judge Brandon, who was Probate Judge of Tuscaloosa County, Alabama, was re-elected on November 6, 1934, for a new term to commence in January 1935. He died on December 6, 1934, without making bond and filing the oath of office for the new term to which he had been elected. The present record discloses that Collier, who was Sheriff of Morgan County, Alabama, was re-elected in November 1958, and qualified on November 24, 1958, for the new term commencing in January 1959, by making his bond and securing its approval and filing it and his oath of office, and on December 1, 1958, his commission for the new term was issued.

It is the insistence of the appellee that we are here dealing not with an officer who has

been re-elected and who died before qualifying, but with an officer who has been re-elected and who has duly qualified for the new term prior to his death; and that the death of an officer-elect after he has qualified by giving bond and filing the oath of office, but before his term is commenced, creates a vacancy in the new term which is subject to be filled by the appointing power (the governor) in office at the time of the commencement of the new term. He cites numerous authorities to this effect from other jurisdictions.

We will not here attempt to analyze those cases, but we must not lose sight of the fact that in some of the cases at least, the officer elected for the new term was not the same person who had held or was holding the same office at the time the new officer was elected.

But whatever the rule may be in other jurisdictions, we are to the clear conclusion that this case is controlled by the case of State ex rel. Foster v. Rice, supra.

In the Rice case, supra, Judge Brandon, who was Probate Judge of Tuscaloosa County, Alabama, was re-elected on November 6, 1934, for a new term to commence in January 1935. He died on December 6, 1934, without having made bond or filing the oath of office for the new term for which he had been elected. Governor Miller, whose term of office expired contemporaneously with the term in which Judge Brandon was serving at the time of his death, on December 14, 1934, appointed Rice to the office. Thereafter, on December 19, 1934, the clerk of the circuit court certified to Governor Miller that Judge Brandon had not filed bond for the new term for which he had been elected. On January 5, 1935, Governor Miller again appointed Rice to the office, and on January 9, 1935, Rice qualified for the office and received his commission. The term of Governor Graves commenced contemporaneously with the new term to which Judge Brandon had been elected, and when he took office he

appointed Foster who instituted a quo warranto proceeding to oust Judge Rice.

This Court in the Rice case, supra, said:

"Judge Brandon had been elected to the office of judge of probate in the November election, his term to begin in January, 1935. He and he alone had the inchoate right to become the actual incumbent of the office for the term beginning in January. He could have qualified prior to the date of his death. Had he duly qualified for the office, and then died, it would seem clear that a vacancy would have been created for the new term, subject to be filled by the Governor. A like result is reached upon his failure to qualify, and the certification thereof as provided by section 2610 of the Code. This vacancy occurred, therefore, during Governor Miller's term. The statute prescribes that the vacancy be filled by the appointing power, and that power was Gov. Miller."

The authority of the Rice case is strengthened by the treatment of it in the subsequent cases of State ex rel. Bland v. St. John, 244 Ala. 269, 13 So.2d 161, and State ex rel. Smith v. Deason, 264 Ala. 596, 88 So.2d 674.

In the St. John case, supra, Joe V. Knight was duly elected to the office of County Solicitor of Cullman County, Alabama, in the general election on November 3, 1942, while in the U. S. Army, under the provisions of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A. Appendix, §§ 301–318. The period for which he was inducted was until the termination of the present war and for a period of six months thereafter (Acts of December 13, 1941, 55 Stat. 799, 50 U.S.C.A. Appendix, §§ 731, 732). The appellant contends that Mr. Knight had thirty days after he qualified as such official within which to advise the Governor that he desired to avail himself of the privileges and immuni-

ties of the act in question. This Court held that the Rice case did not apply, stating:

"* * * Under the provisions of the instant act, he had thirty days from the time he became the incumbent of the office within which to advise the Governor that he wished to avail himself of the rights, privileges and immunities of the act in question, due to his absence in the military service.

* * * * * *

"Mr. Knight returned to Cullman from the army on January 18, 1943, and for aught appearing was free to remain there as long as he saw fit to do so. In State ex rel. Foster v. Rice, 230 Ala. 608, 162 So. 292, 297, it was observed: 'He and he alone had the inchoate right to become the actual incumbent of the office for the term beginning in January.' Said case points out that the rule permitting a prospective appointment to fill an anticipated vacancy is limited to instances in which the vacancy is sure to occur. In that case it is indicated Brandon had died before he had filed a bond or qualified as required by law, and under such facts a vacancy actually existed. In the instant case, neither the governor then in office nor any other person could say on the 22nd day of December, 1942 (or on January 18, 1943), that a vacancy was sure to occur in the office of county solicitor of Cullman County, Alabama." [244 Ala. 269, 13 So.2d 167.]

In the Deason case, supra, the court was concerned with a vacancy which existed by reason of the failure to elect a successor to an incumbent whose term was limited by the statute under which the incumbent had been appointed. In referring to the Rice case, supra, this Court stated:

"The first question in this connection is whether the then governor had the right to fill a vacancy which was created by the failure to elect a successor to an incumbent whose tenure of office is fixed by law. The case of State ex rel. Foster v. Rice, 230 Ala. 608, 162 So. 292, is pertinent. Vacancies in the office of Judges and justices must be filled by appointment by the governor. Section 158 of the Constitution. In the Rice case Judge Brandon was probate judge and his term of office expired Monday after the second Tuesday in January, 1935. Section 16, Title 41, Code. He was elected in November 1934 for a new term extending from Monday after the second Tuesday in January. He died before the expiration of the time for filing his bond. His new term was thereby caused to be vacant under section 47, Title 41 (section 2610, Code 1923). The clerk of the circuit court certified such vacancy to the governor who appointed respondent Rice to the office. The term of the governor expired at 12:00 o'clock Monday night after the second Tuesday in January 1935. The Court held that the then governor had the right to appoint under section 158 of the Constitution. The vacancy occurred before the term began, but it was held to be a vacancy nevertheless under Section 47, supra, on the first day of his term." [264 Ala. 596, 88 So.2d 679.]

In the case of State ex rel. Shirley v. Lutz, 226 Ala. 497, 147 So. 429, 432, decided prior to the Rice case, this Court, in dealing with an act creating a board to be known as the "Board of Plumbers Examination and Registration of Alabama," and to provide for the appointment of the members of said board, held that the appointments, by the proper appointing power, made before the act itself became effective, were proper appointments, saying:

"A vacancy in the office was sure to occur on the effective date of the act; the law disfavors any vacancy in office.

"We sanction the rule that on the creation of a new office by an act to become effective at a later date, ap-

pointments in the meantime to fill the offices so created are not premature and illegal. People ex rel. Graham v. Inglis, 161 Ill. 256, 43 N.E. 1103; State ex rel. Clarke v. Irwin, 5 Nev. 111; Mechem on Public Offices and Officers, § 133."

The appellee argues that the statement contained in the Rice case [230 Ala. 608, 162 So. 297], supra, "Had he duly qualified for the office, and then died, it would seem clear that a vacancy would have been created for the new term, subject to be filled by the Governor" is not necessary for a decision in that case and is obiter dictum. He further insists that the vacancy in the Rice case, supra, was brought about solely because of Sec. 47 of Title 41, Code of 1940 (Sec. 2610, Code of 1923), which was in effect at all times material to a decision in the Rice case.

This section provides as follows:

"If any officer required by law to give bond fails to file the same within the time fixed by law, he vacates his office; and in such case, it is the duty of the officer in whose office such bond is required to be filed, at once to certify such failure to the appointing power, and the vacancy must be filed as in other cases."

The trial court evidently was of the same opinion, for after declaring that the Rice case was based on the statute said:

" * * * There is no statute which provides that there will be a vacancy created in the office to which a person is elected if he properly qualifies and then dies. * * *"

We do not think it essential to the existence of a vacancy that it be declared by statute. Statutes frequently do enumerate the situations which create or constitute vacancies in public office. However, no statute which we have found, nor does the statute quoted above, exclude vacancies arising from causes not there enumerated, such as the failure to elect or appoint a successor to an officeholder, dealt with in State ex rel. Smith v. Deason, supra, Ham v. State ex rel. Blackmon, 162 Ala. 117, 49 So. 1032, and State ex rel. Benefield v. Cottle, 254 Ala. 520, 49 So.2d 224. See also Shepherd v. Sartain, 185 Ala. 439, 64 So. 57, where it was held that the acceptance of another office created a vacancy not declared by statute.

A careful study of the Rice case, followed by the St. John and the Deason cases, supra, clearly indicates a deliberate holding by this Court that the governor in office at the time a vacancy occurs is vested with the power of appointment to fill the vacancy, and that such power exists even though the term which is vacant has not commenced and will not commence until the expiration of the term of the then governor.

In the Rice case, supra, this Court was faced with the problem of choosing one or the other of two alternatives. Of necessity, it had to decide either that the retiring governor in office when the vacancy occurred, or where it was sure to occur, had the power to appoint to fill the vacancy, or that the incoming governor who would be in office when the vacant term commenced, had the power of appointment. This Court deliberately chose the former. We say deliberate because the late Mr. Justice Thomas wrote a vigorous dissent in attempting to sustain the other point of view. The argument of appellee is ingenious, but it fails to convince. The vacancy in the office of the sheriff in this case is just as sure, certain, permanent and unalterable as the vacancy declared by statute in the Rice case, supra.

The Rice case, supra, is a deliberate holding by this Court which has stood for approximately a quarter of a century. Many legislatures have come and gone since the holding in that case. They could have changed the result had they so desired. They have not done so. While some of the Justices think the doctrine argued by the

appellee would be the better rule, all are of the opinion that it would be better for the legislature to act than for this Court to overrule one of its decisions that has stood for a long period of time, and in a case where one of two alternatives had to prevail. Furthermore, it is in reality no encroachment on the incoming governor's powers, because as the end of his term approaches, he has the same identical power as did his predecessor.

We are of the opinion that the lower court was in error in not sustaining the demurrer to the information, and in sustaining the demurrer to Plea 3, and in rendering a judgment in favor of appellee and against appellant.

Judgment is here rendered adjudging appellant to be the lawful holder of said office.

Reversed and rendered.

All the Justices concur, MERRILL, J., concurring specially.

MERRILL, Justice (concurring specially).

I agree that we should find for the appellant if the case of State ex rel. Foster v. Rice, 230 Ala. 608, 162 So. 292, is to be followed.

The only part of the holding in the Rice case with which I agree is that § 2567 of the 1923 Code, now Title 41, § 16, Code 1940, was constitutional.

I think the better rule would be that no appointment should be made until the new term has actually begun. That would mean that the appointing power in office on the date of the beginning of the term would make the appointment.

However, I agree that this important question of public interest is now a matter of legislative policy in view of the long period of time that the Rice case has been the accepted law.