This is an expedited appeal from a declaratory judgment of the Circuit Court of Montgomery County establishing the date of the next municipal election for the mayor and council of the City of Montgomery. In this case, the Court is called upon to construe the effect of several acts of the Legislature as they relate to what is known as a "general act of local application" which established a special form of mayor-council municipal government for the City of Montgomery.
On November 5, 1974, the people of Montgomery voted to change their form of government from the commission form to the mayor-council form. Act No. 618 of the Regular Session of the 1973 Alabama Legislature contained separate provisions for the election of the mayor and council members after the initial election of such officials. Pursuant to Act No. 618, a special city election was held on September 2, 1975. The permanent election date cycle pursuant to Act No. 618 began on the second Tuesday in October 1979. The current mayor and council members qualified and ran in that election and were elected for a four-year term beginning on the second Tuesday in November 1979.
In March 1980, the Legislature passed Act No. 80-94 which is codified in the Supplement to Code 1975, as § 11-46-21 et seq. Section 11-46-21, as amended effective May 4, 1982, reads:
 "§ 11-46-21. Time of holding regular, special and runoff elections; assumption of duties by officers elected; service until successors are elected and qualified.
 "(a) The regular municipal elections in cities and towns shall be held on the second Tuesday in July 1980, and quadrennially thereafter; and, when necessary as provided in subsection (d) of section 11-46-55, a second or runoff election shall be held on the third Tuesday next thereafter following said regular election.
 "(b) Special elections shall be held on the second or fourth Tuesday of any month when ordered by the municipal governing body; provided, that notice of such election shall be published in the manner prescribed in section 11-46-22 on or before the corresponding Tuesday of the second month preceding the month in which the special election is to be held.
 "(c) Municipal officers elected at regular elections shall assume the duties of their respective offices on the first Monday *Page 1248 
in October following their election unless otherwise provided in this article and shall serve until their successors are elected and qualified. (Acts 1961, No. 663, p. 827, § 2; Acts 1971, No. 159, p. 434; Acts 1980, No. 80-94, p. 140, § 1; Acts 1982, No. 82-458, § 2.)"
Section 11 of Act 80-94 provided for the repeal of laws or parts of laws inconsistent with that Act.
On April 18, 1980, the Legislature passed Act No. 80-243, codified at Code 1975, § 11-46-5, which reads:
 "§ 11-46-5. Date of elections in certain Class 3 municipalities.
 "The governing body of any Class 3 municipality having a mayor-council form of government and having a general municipal election or runoff election required by general or local act at a time different from the dates now or hereafter provided by article 2, chapter 46 of Title 11, may elect by ordinance to have such election at the same time as required by said article 2; provided, that any such election made by ordinance shall not have the effect of changing the beginning of any term of office or the time for taking office. (Acts 1980, No. 80-243, p. 320.)"
The City of Montgomery obtained an Attorney General's opinion as to whether Act No. 80-94 changed the date of municipal elections for the City of Montgomery. It was the opinion of the Attorney General that Act No. 80-94 repealed Act No. 618. Apparently, the basis of that opinion was that Section 11 of Act No. 80-94 repealed inconsistent laws and that the date and election year provided by Act No. 618 were inconsistent with Act No. 80-94.
On March 1, 1983, Emory Folmar as Mayor of the City of Montgomery and appellee herein, filed a complaint for declaratory relief, seeking to have the trial court interpret the above-cited statutes pertaining to municipal elections for the City of Montgomery. The record reflects that the Attorney General for the State of Alabama and the Secretary of State were parties defendant. Motions to intervene in this action were filed by Mark Gilmore, Jr., Joe L. Reed and Donald V. Watkins, individually and as Council members for the City of Montgomery. The trial court held that the next election for the mayor and council members for the City of Montgomery should be held on the second Tuesday in July 1983, and quadrennially thereafter and that the term of office for these officials would begin on the first Monday in October following each regular election. The trial court determined that the Legislature, in enacting Acts No. 80-94 and No. 80-243, was attempting to have all municipal elections held in July of the year in which the municipal officer's term was to expire, rather than in a quadrennial year calculated from 1980.
Following an appropriate motion, this Court denied a stay of the trial court's order pending appeal. This appeal was expedited, and the record on appeal and briefs of the parties were filed and the case was submitted for decision on May 23, 1983.
The basic question concerns the effect of Act No. 80-94 on the time for municipal elections for the City of Montgomery established by Act No. 618. It is well established that the power of the Legislature under the state constitution is supreme in prescribing the powers and duties of municipalities.Trailway Oil Co. v. City of Mobile, 271 Ala. 218, 122 So.2d 757
(1960). It is not for this Court to substitute its judgment for that of the Legislature. City of Jasper v. Daugherty,424 So.2d 615 (Ala. 1982). In interpreting statutes, the underlying consideration is to understand and effectuate the intent of the Legislature as expressed in the statutes. Employees' RetirementSystem of Alabama v. Head, 369 So.2d 1227 (Ala. 1979); Championv. McLean, 266 Ala. 103, 95 So.2d 82 (1957).
With regard to discerning the legislative intent, appellants argue that where there exists a dispositive statute, complete on its face, the statute speaks for itself, so that the proper rule of construction would be to follow the explicit language of the statute. Appellants maintain that Act No. 80-94, by its explicit terms, required that general municipal elections be held on the second Tuesday *Page 1249 
in July 1980 and quadrennially thereafter; in other words, that the general municipal election for the City of Montgomery be held on the second Tuesday in July 1984. Appellants acknowledge that their interpretation of Act 80-94 would have the effect of extending the terms of the affected officials beyond the four years for which they were elected. Relying on § 11-46-21 (c), appellants maintain that the current mayor and council members would hold over after the expiration of their terms in November 1983 until their successors were elected and qualified to take office in October 1984. They contend that this result is supported by the May 1982 amendment to § 11-46-21, which added to subsection (c) the words "and shall serve until their successors are elected and qualified."
We agree with appellants' contention that, if possible, the legislative intent must be derived from the expression in the statute. Town of Loxley v. Rosinton Water, Sewer and FireProtection Authority, Inc., 376 So.2d 705 (Ala. 1979);Employees' Retirement System of Alabama v. Head, 369 So.2d 1227
(Ala. 1979). Where more than one statute is involved, however, they should be construed in harmony with other statutes in effect, so far as is practical. Waters v. City of Birmingham,282 Ala. 104, 209 So.2d 388 (1968); State ex rel. Richardson v.Morrow, 276 Ala. 385, 162 So.2d 480 (1964); Gulf States SteelCo. v. Justice, 204 Ala. 577, 87 So. 211 (1920); B.F. GoodrichCo. v. Butler, 56 Ala. App. 635, 324 So.2d 776, cert. quashed,295 Ala. 401, 324 So.2d 788 (Ala.Civ.App. 1975). In construing a statute, the court must look not only to the language of the statute, however, but also to the purpose and object of the enactment, and its relation to other laws and conditions which may arise under its provisions. State ex rel. Richardson v.Morrow, supra.
We believe that a review of the recent history of municipal election law in the City of Montgomery is helpful in ascertaining the intent of the Legislature. In 1961, the Legislature adopted a statute governing municipal elections in cities or towns having a mayor-council form of government with a population of 300,000 inhabitants or less. Acts 1961, No. 663, p. 827, § 1, et seq., codified at Code 1975, § 11-46-20 et seq. The 1961 act provided that regular municipal elections would be held on the "second Tuesday in August 1964, and quadrennially thereafter." In 1973 the Legislature enacted Act No. 618, which proposed a mayor-council form of government for the City of Montgomery, and made provisions for the holding of municipal elections, and for the regulation of such elections, including the dates for elections and the dates upon which municipal officials elected would assume office. Act No. 618 was ratified on November 5, 1974, at a special election called for such purpose. Act No. 618 did not provide that the City of Montgomery would be governed by the 1961 Act, which is now codified at Article 2, Section 46 of Title 11, Code 1975. Instead, Act No. 618 provided, among other things, a comprehensive plan for municipal elections for the City of Montgomery, which differed substantially from the plan established by the 1961 Act. Act No. 618 called for quadrennial elections, as did the 1961 Act and as does Act No. 80-94, except that under Act No. 618, the four-year period began in 1975. By provision of Code 1975, § 1-1-10, the codification of the 1961 Act into Article 2, Title 11, did not repeal or affect the provisions of Act No. 618. Thus, up until the passage of Act No. 80-94 in 1980, the two statutes existed side by side, with Montgomery holding its municipal election in a year and on a date different from the year and date provided in the 1961 Act.
Approximately one month after the Legislature enacted Act No. 80-94, it passed Act No. 80-243, codified at § 11-46-5. Section11-46-5 applies only to "class 3" municipalities. Section11-40-12, Code 1975, states that class 3 municipalities are all cities with populations of not less than 100,000 and not more than 174,999 inhabitants according to the 1970 federal decennial census. We take notice of the fact that according to the 1970 federal decennial census, set out in 1982 Acts, Vol. 2, p. 1271, the *Page 1250 
City of Montgomery is a class 3 municipality. By its express terms, § 11-46-5 allows any class 3 municipality having a mayor-council form of government and an election date different from the date specified by § 11-46-21 to elect by ordinance to advance its election date to the second Tuesday in July. The Legislature, in passing Act No. 80-243, apparently recognized that some municipalities have continued to conduct their elections at a date different from the date provided by §11-46-21.
After considering these relevant statutes with a view toward "harmonizing" their provisions, we conclude that the Legislature, in enacting Act No. 80-94, did not intend to repeal or in any way affect Act No. 618. We believe that this conclusion is buttressed by the absence of express language in Act No. 80-94 extending or diminishing the terms of office of the mayor and council members. Any attempt by the Legislature to establish a uniform date and year for municipal elections would necessarily involve adjustments to the terms of office of certain incumbent officers. We disagree with appellants' contention that such an intended outcome is apparent from the face of the statute. Nor do we agree with appellants' argument that the May 1982 amendment to § 11-46-21 (c) indicates that the Legislature intended to extend the terms of incumbent officers. In State ex rel. Benefield v. Cottle, 254 Ala. 520,49 So.2d 224 (1950), this Court stated:
 "It is now the settled law of this state that the words `until his successor is elected and qualified' were never intended to prolong the term of office beyond a reasonable time, after the election, to enable the newly elected officer to qualify."
254 Ala. at 521, 49 So.2d at 225.
We observe that the title to Act No. 80-94 makes no reference to extending the term of office of incumbent officers. The title to Act No. 80-94 reads as follows:
"AN ACT
 "To amend Sections 11-46-21, 11-46-22, 11-46-25, 11-46-26, 11-46-36, 11-46-45, 11-46-46 and 11-46-55, Code of Alabama, 1975, as amended, so as to change and set new dates for municipal elections conducted under the provisions of Article 2, Chapter 46 of Title 11, Code of Alabama, 1975; to change requirements for notice of such elections; and to effect certain date changes to meet the requirements and procedures necessitated by the new election dates; and to validate and ratify the salary of mayors and councilmen prescribed prior to February 12, 1980."
The Constitution of Alabama of 1901, Article IV, § 45, requires that the subject be "clearly expressed in the title." Although this requirement is to be accorded a liberal interpretation so as not to "cripple legislation," Knight v.West Alabama Environmental Improvement Authority, 287 Ala. 15,246 So.2d 903 (1971), the requirement should be interpreted to obtain its objectives. Three such objectives have been identified:
 "[F]irst, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, and in order that they may have the opportunity of being heard thereon, by petition or otherwise, if they shall so desire; second, truly to inform members of the legislature who are to vote upon the bill, what the subject of it is so that they may not perform that duty, deceived or ignorant of what they are doing; and third, to prevent the practice of embracing in one bill several distinct matters, none of which, perhaps could singly obtain the assent of the legislature, and then procuring its passage by a combination of the minorities in favor of each of the measures, into a majority that will adopt them all."
Bagby Elevator and Electric Company, Inc. v. McBride, 292 Ala. 191,194, 291 So.2d 306, 308 (1974), quoting earlier cases. Even allowing for the liberal interpretation to be given the title of Act 80-94, we are of the view that it was not sufficient to inform the average person or legislator that one of the purposes of this legislation was to extend *Page 1251 
the terms of municipal officials. We believe that the absence of reference to extension of the terms of the incumbent officers in the title to Act 80-94 is evidence that the Legislature did not intend to set the election date for the City of Montgomery for July 1984.
Finally, we believe that our determination that the Legislature did not intend to repeal Act No. 618 is the only interpretation which gives full effect to the provisions of §11-46-5. The interpretation urged by appellants, that Act No. 80-94 repealed all acts providing for an election date different from July 1984, would render § 11-46-5 meaningless. According to this view, all inconsistent laws would have been repealed and therefore no class 3 municipality could have exercised the option to change its date of election to the date provided in Act 80-94.
From what we have stated, it follows that the trial court erred when it ordered that the election be held in the City of Montgomery on the second Tuesday in July 1983 to elect a mayor and council members and that those officials thereby elected take office on the first Monday of October 1983. For the reasons stated, it is our opinion that the general election for the mayor and council members of the City of Montgomery should be held in accordance with the provisions of Act No. 618. The judgment of the trial court is reversed and this cause is remanded for an order consistent with this opinion.
REVERSED AND REMANDED.
All the Justices concur.